UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TED J. MATHERNE, SR., TED J.
MATHERNE, JR.; GISELLE MATHERNE    *
ORDOYNE; VANESSA MATHERNE          *
RICHARDSON                         *
                                   *    CIVIL ACTION NO. _____
            Plaintiff              *
                                   *    SECTION: _____
VERSUS                             *
                                   *    JUDGE: _____
HUNTINGTON INGALLS INCORPORATED    *
(formerly NORTHROP GRUMMAN         *
SHIPBUILDING, INC., formerly, NORTHROP *
GRUMMAN SHIP SYSTEMS, INC., formerly, *    MAG. JUDGE _____
AVONDALE INDUSTRIES, INC. and formerly *
AVONDALE SHIPYARDS, INC., formerly *
AVONDALE MARINE WAYS, INC.);       *
LOUISIANA INSURANCE GUARANTY       *
ASSOCIATION; THE TRAVELERS         *
INDEMNITY COMPANY; CERTAIN         *
UNDERWRITERS AT LLOYD'S, LONDON;   *
PENNSYLVANIA GENERAL INSURANCE     *
COMPANY (formerly, American Employers *
Insurance Company); EAGLE, INC. (f/k/a *
EAGLE ASBESTOS  & PACKING COMPANY  *
INC.); BAYER CROPSCIENCE, INC. (successor *
TO RHONE POULENC AG COMPANY,       *
Formerly AMCHEM PRODUCTS, INC., formerly *
BENJAMIN FOSTER COMPANY);          *
FOSTER-WHEELER LLC (formerly       *
FOSTER-WHEELER CORPORATION);       *
GENERAL ELECTRIC COMPANY; HOPEMAN  *
BROTHERS, INC.; TAYLOR-SEIDENBACH, *
INC.; PARAMOUNT GLOBAL (f/k/a      *
ViacomCBS Inc., f/k/a CBS Corporation, a *
Delaware corporation, f/k/a Viacom Inc., *
successor by merger to CBS Corporation, a *
Pennsylvania Corporation, f/k/a Westinghouse *
Electric Corporation); UNIROYAL, INC.; *
INTERNATIONAL PAPER COMPANY;       *
BERKSHIRE HATHAWAY SPECIALTY       *
INSURANCE COMPANY (f/k/a STONEWALL *
INSURANCE COMPANY); UNITED         *
STATES FIDELITY AND GUARANTY       *

00880809

COMPANY; FIRST STATE INSURANCE          *
COMPANY                                 *


Defendants

**************************************************************************

### <u>NOTICE OF REMOVAL</u>

NOW INTO COURT, through undersigned counsel, comes defendant, Huntington Ingalls

Incorporated, f/k/a Northrop Grumman Shipbuilding Inc., f/k/a Northrop Grumman Ship Systems,

Inc., f/k/a Avondale Industries, Inc., f/k/a Avondale Shipyards, Inc. (hereinafter "Avondale"),

who, pursuant to 28 U.S.C. §§ 1441, 1442, and 1446, notices the removal of the above-entitled

action bearing No. 2022-5989 on the docket of the Civil District Court for the Parish of Orleans,

State of Louisiana (the "State Case"), to the United States District Court for the Eastern District of

Louisiana.

1.

This Court has subject matter jurisdiction because the State Case is an action for or relating

to conduct under color of federal office commenced in a state court against persons acting under

one or more federal officers within the meaning of 28 U.S.C. § 1442(a)(1).

2.

Venue is proper in this Court because it is the district court for the district in which the

State Case is pending.  28 U.S.C. § 1442(a).

3.

On July 6, 2022, Plaintiffs, Ted J. Matherne, Sr., Ted J. Matherne, Jr., Giselle Matherne

Ordoyne, and Vanessa Matherne Richardson, filed a Petition for Damages in the suit bearing Case

No. 2022-5989 in Civil District Court for the Parish of Orleans, naming Avondale as a defendant.[1] The Petition alleges that Roseanna Matherne was diagnosed with mesothelioma and died on March 10, 2022 as a result of exposure to asbestos through contact with her husband, Ted J. Matherne, Sr., "as well as through the handling and washing of his clothes and other objects belonging to him as well as being in the area of others washing and handling his clothes and other objects belonging to him.[2] Plaintiffs allege that Ted J. Matherne, Sr. worked "with and/or on the premises" of Avondale from 1965 through 1983.[3]

4.

The Petition alleges that Avondale was required to comply with the standards related to asbestos set forth specifically by the Walsh Healey Public Contracts Act ("Walsh Healey Act").[4] The Petition further alleges that Avondale "failed and/or willingly refused to comply with these standards thereby resulting in exposure to asbestos to the [sic] Mr. Matherne, thereby resulting in injury to Roseanna Matherne."[5] In other words, Plaintiffs contends that that "Ted J. Matherne Sr. was exposed to asbestos being used and handled at Avondale. Accordingly, Roseanna Matherne was exposed to asbestos from the person, clothing, and other objects of her husband, Ted J. Matherne, Sr. According to Plaintiffs, this exposure occurred because Avondale and its executive officers failed to comply with safety standards identified herein," including the Walsh Healey Act.[6]

5.

The Walsh Healey Act applies to U.S. government contracts with private entities exceeding $10,000.00 for the manufacturing or furnishing of goods. Through the Walsh Healey Act, the

---

[1] Exhibit A, Petition for Damages.
[2] *Id.* ¶ 10.
[3] *Id.* ¶ 3.
[4] *Id.* ¶ 18.
[5] *Id.*
[6] *Id.* ¶ 19.

federal government issued advisories to government contractors, like Avondale, regarding asbestos and safety standards related to the levels of permissible asbestos exposure. The only federal contracts that Avondale had between 1965 and 1983, and thus the only contracts subjecting Avondale to the requirements of the Walsh Healey Act, were contracts between Avondale and the United States to build different types of Federal Vessels.

6.

During the relevant Avondale employment period, 1965 to 1983, approximately 93 of the approximately 249 vessels under construction at Avondale—more than 37 percent—were constructed pursuant to contracts with the federal government. More specifically, Avondale was constructing vessels built pursuant to contracts with the United States Navy, the United States Coast Guard, and the United States Maritime Administration ("MARAD"). These vessels included U.S. Navy Destroyer Escorts and Landing Craft Utility vessels ("LCUs"), U.S. Coast Guard Cutters, and Gulf Lines, Lykes Lines, States Lines, and LASH cargo vessels constructed for MARAD (collectively, the "Federal Vessels"). These vessels were built with asbestos-containing products and materials pursuant to Navy, Coast Guard, and MARAD's requirements. Thus, to the extent Plaintiffs are alleging violations of the Walsh Healey Act through exposure to asbestos-containing materials at Avondale during this time, such exposure is necessarily attributable to asbestos-containing materials required and destined for use in the construction of these U.S. Navy, U.S. Coast Guard, and MARAD vessels.

7.

These Federal Vessels were built with asbestos-containing products and materials pursuant to the U.S. Government's requirements. Thus, to the extent Plaintiffs are alleging exposure from asbestos-containing products at Avondale during this time, such exposure is necessarily

attributable to asbestos-containing products required and destined for use in the construction of these Federal Vessels.

8.

Thus, Plaintiffs' Petition reveals on its face that they are claiming that Roseanna Matherne's exposure to asbestos at Avondale is attributable, in part, to asbestos used and installed on Federal Vessels at Avondale, pursuant to Avondale's contracts with the federal government. *See, e.g., Bourgeois v. Huntington Ingalls, Inc.,* No. 20-1002, 2020 WL 2488026 at *10 (E.D. La. May 14, 2020) ("Under the broad reading of 'relating to' *Latiolais* dictates, … the evidence that six Navy vessels were under construction while Bourgeois worked at Avondale, tend to show that Bourgeois was likely exposed to asbestos used under the direction of a federal officer, thereby satisfying the connection prong") (Ashe, J.); *Ragusa v. Louisiana Insurance Guaranty Association,* 573 F.Supp.3d 1046, 1052 (E.D. La. Nov. 23, 2021) ("Under the broad reading of the connection prong, the evidence that at least two federal vessels were under construction during the time of the alleged exposure tends to show that Plaintiff was likely exposed to asbestos being used under the direction of a federal officer") (Barbier, J.).

9.

This removal is being filed on August 12, 2022, within thirty (30) days of service of Plaintiffs' Original Petition for Damages on July 15, 2022.[7]

10.

This action involves persons acting under the authority of an officer of the United States within the meaning of 28 U.S.C. § 1442(a)(1). To establish jurisdiction under this statute, a defendant must show: (1) it has asserted a colorable federal defense, (2) it is a "person" within the

---

[7] *See* Exhibit A.

meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the charged conduct is related to an act pursuant to a federal officer's directions. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (*en banc*).

11.

Avondale is a "person" within the meaning of 28 U.S.C. § 1442(a)(1).  *See Savoie v. Huntington Ingalls Incorporated,* 817 F.3d 457, 461 (5th Cir. 2016).

12.

Avondale was "acting under" an "officer … of the United States or [an] agency thereof" within the meaning of § 1442(a)(1) when it built the above-mentioned Federal Vessels for the United States government because the United States government contracted with Avondale to perform a task that the federal government otherwise would itself have had to perform—namely, to build ships "used to help conduct a war," for use as naval and military auxiliaries, to promote foreign and domestic commerce, and to further other national interests.  *E.g.*, *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153-54 (2007); *Savoie,* 817 F.3d at 461-62 (Avondale was acting under a federal officer in the construction of vessels for the United States Navy); *Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 713 (5th Cir. 2015) (Avondale was acting under a federal officer in the construction of vessels for the United States Maritime Administration); *Dempster v. Lamorak Ins. Co.*, No. 20-95, 2020 WL 468611, at *11 (E.D. La. Jan. 28, 2020) (same).

13.

Avondale was also "acting under" an "officer … of the United States or [an] agency thereof" within the meaning of § 1442(a)(1) when it built the Gulf Lines, Lykes Lines, States Lines, and LASH cargo vessels pursuant to contracts with MARAD because the United States

government, acting through MARAD, had contracted with Avondale to perform a task that the government otherwise would itself have had to perform – to build ships for use as naval and military auxiliaries, to promote foreign and domestic commerce, and to further other important national interests. *Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 713 (5th Cir. 2015) (Avondale was acting under a federal officer in the construction of vessels for the United States Maritime Administration); *Dempster v. Lamorak Ins. Co*., No. CV 20-95, 2020 WL 468611, at *11 (E.D. La. Jan. 28, 2020) (same).

14.

If Roseanna Matherne was exposed to asbestos from work undertaken by Ted J. Matherne, Sr. at Avondale in conjunction with the construction of the Federal Vessels in violation of Walsh Healey's asbestos standards as alleged, the use of asbestos-containing materials on those vessels was required, controlled, and/or authorized by officers of the United States.

15.

Plaintiffs' claims against Avondale are claims "for or related to" acts performed under color of federal office within the meaning of the text of 28 U.S.C. § 1442(a)(1) because the charged conduct is "connected or associated with" an act under a federal officer's direction. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d at 296.

16.

The use and installation of asbestos-containing materials in the construction of Federal Vessels was required by the contractual provisions and design specifications mandated by the United States government.

17.

The materials used in the construction of the Federal Vessels—including asbestos-containing materials—were the kind, type, and brand of materials specifically mandated by the vessel construction contracts between Avondale and the United States government, and by the incorporated drawings, plans and specifications for the construction of the Federal Vessels.

18.

The shipbuilding process—specifically including the use and installation of asbestos-containing materials aboard the Federal Vessels—was supervised and monitored by inspectors and other representatives of the United States government to ensure that Avondale complied with the design specifications mandated by the U.S. Navy, the U.S. Coast Guard, and MARAD.

19.

The inspections by representatives of the United States government included a determination that the supplies (including raw materials, components, and end products) used in the construction of the Federal Vessels were the supplies required by the contracts and specifications, including asbestos-containing materials. Inspections occurred throughout construction and prior to final acceptance of the Federal Vessels.  If Avondale did not use the supplies required by the contracts, including asbestos-containing materials, the federal government could demand that Avondale replace the supplies with conforming materials and/or put Avondale in default of contract.

20.

The United States government required Avondale to provide representatives of the United States government, including government inspectors, with office space and other attendant facilities within the shipyard.

21.

Extensive Dock Trials, Builder's Trials, and Sea Trials on the Federal Vessels were performed by representatives of the United Sates government prior to the commission of each Federal Vessel to ensure conformity with the design specifications mandated by the United States government.

22.

The United States government also promulgated specific safety rules, regulations, and requirements for shipbuilding. These regulations included specific permissible safe exposure levels for asbestos pursuant to the Walsh Healey Public Contracts Act, the Occupational Health and Safety Act, and the United States Department of Labor Safety and Health Regulations for Shipbuilding (29 C.F.R. § 1502.1), which set safety standards to meet the provisions of the Longshore and Harbor Workers' Compensation Act requirements to render Avondale's workplace safe pursuant to 33 U.S.C. § 941. Avondale was guided by and required to comply with these safety regulations during construction of the Federal Vessels. Federal safety inspectors specifically monitored and enforced these safety regulations as well as the construction of the Federal Vessels on a day-to-day and job-specific basis.

23.

Avondale raises two colorable federal defenses to one or more of Plaintiffs' claims in this action. First, one or more of Plaintiffs' claims is barred under the jurisprudential doctrine of government contractor immunity established by *Boyle v. United Techs. Corp.,* 487 U.S. 500 (1988), and its progeny. *Latiolais,* 951 F.3d at 297-98 (holding Avondale's *Boyle* defense is colorable). Furthermore, Plaintiffs' negligence claims relate to the acts performed under color of federal office.

24.

The reasonably precise design specifications established by the federal government mandated the installation of asbestos-containing materials on the Federal Vessels. The Federal Vessels conformed to the specifications mandated by the United States government—including the specifications mandating the use of asbestos—and Avondale, therefore, built the Federal Vessels using asbestos. The federal government had knowledge of the potential hazards of asbestos-containing materials in the workplace that was equal to or superior to that of Avondale.

25.

Second, Plaintiffs' claims against Avondale are barred by the federal defense of derivative sovereign immunity as set forth in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940), and its progeny. *Yearsley* established that a federal government contractor, performing at the direction and authorization of a federal government officer, is immune from suit based upon performance of the contract. The *Yearsley* doctrine applies here, rendering Avondale immune from suit, because Avondale performed the at-issue acts at the direction of federal government officers acting pursuant to federal government authorization.

26.

Removal under 28 U.S.C. § 1442 does not require the consent of any defendant. *See Ely Valley Mines, Inc. v. Hartford Acc. and Indemnity Co.,* 644 F.2d 1310 (9th Cir. 1981); *Bottos v. Avakian,* 477 F. Supp. 610 (N.D. Ind. 1979), *aff'd*, 723 F.2d 913 (7th Cir. 1983).

27.

Because this Court has federal officer jurisdiction over at least one claim asserted by Plaintiffs, it has supplemental jurisdiction over the entire action. *Savoie,* 817 F.3d at 463; 28 U.S.C. § 1367(a).

28.

With this Notice, Avondale is filing a "copy of all process, pleadings, and orders served upon" it in the State Case.  28 U.S.C. §§ 1446(a), (d).  In addition, written notice is being given to all adverse parties, and a copy of this Notice is being filed with the Clerk of the Civil District Court for the Parish of Orleans, State of Louisiana.

**ACCORDINGLY**, Avondale gives notice that the proceeding bearing 2022-5989 on the docket of the Civil District Court for the Parish of Orleans, State of Louisiana, is removed to the docket of this Court for trial and determination as provided by law, and asks that this Court enter such orders and issue such process as may be proper to bring before it copies of all records and proceedings in the State Case, and to proceed with this civil action as a matter properly removed.

Respectfully submitted,

**IRWIN FRITCHIE URQUHART & MOORE, LLC**

_____
Gus A. Fritchie (#5751)
Timothy F. Daniels (#16878)
David M. Melancon (#23216)
Darlene Peters (#25638)
Kevin Powell (#25324)
Connor W. Peth (#39499)
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone: 504-310-2100
Facsimile: 504-310-2101

***Counsel for Huntington Ingalls Incorporated***

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a copy of the foregoing Notice of Removal was filed electronically with the Clerk of Court using the Court's CM/ECF system and a copy sent to all counsel of record by electronic means on the 12th day of August, 2022.

_/s/ David M. Melancon_