UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TED J. MATHERNE, SR., ET
AL.

CIVIL ACTION

VERSUS

22-2656

HUNTINGTON INGALLS
INCORPORATED, ET AL.

SECTION: "J"(2)

## ORDER & REASONS

Before the Court is a *Motion for Partial Summary Judgment Regarding Intentional Tort, Alter Ego, and Manufacturer Strict Liability* **(Rec. Doc. 208)** filed by Defendant/Cross-Claim Defendant Hopeman Brothers, Inc. ("Hopeman"). Huntington Ingalls Incorporated ("Avondale") and Plaintiffs have filed memorandums in opposition (Rec. Docs. 251, 267), and Hopeman has filed replies to both oppositions. (Rec. Docs. 305, 306). Having considered the motions and legal memoranda, the record, and applicable law, the Court finds that the motions should be **GRANTED**.

## LEGAL STANDARDS

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence

in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may

not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

Defendant Hopeman Brothers, Inc. ("Hopeman") has moved for summary judgment on Plaintiffs' claims of intentional tort, alter ego, and manufacturer strict liability. Hopeman asserts that it has filed identical motions to this one in the Eastern District of Louisiana which are routinely granted and asserts that this Court should reach the same conclusion in the instant motion. (Rec. Doc. 208, at 1). Because Hopeman is moving for summary judgment on three different claims, the Court will address them in turn.

### I. INTENTIONAL TORT

As to Plaintiffs' intentional tort claims, the Court finds that Plaintiffs will be unable to meet their burden of proof on this claim. Plaintiffs would be required to show that Hopeman "either consciously desired that plaintiff contract [mesothelioma] or knew that the result was substantially certain to follow from its conduct." *Becnel, et al. v. Lamorak Ins. Co., et al.*, No. 19-14546, Rec. Doc. 788, at *6 (E.D. La. June 13, 2022). Plaintiffs don't allege that Hopeman intended for Mrs. Matherne to get mesothelioma, and for them to prove that Hopeman knew such a disease would result by a substantial certainty, Plaintiffs would have to prove something more than just "knowingly permitting a hazardous work condition to exist." *Id.* (citing *Zimko v. Am. Cyanamid*, 905 So.2d 465, 475 (La. App. 4th Cir. 2005)). Plaintiffs present evidence that Hopeman was aware of the potential hazards

of their product, but none of their evidence rises to the level of showing that Hopeman was substantially certain that Mrs. Matherne's mesothelioma would result. Therefore, as this Court has reasoned in *Vedros, et al. v. Northrop Grumman Shipbuilding, Inc., et al.*, No 11-1198, 2014 WL 906164, at *3 (E.D. La. Mar. 7, 2014) "Plaintiffs' claim against [Defendant] lies in the realm of negligence, not in the realm of intentional tort."

## II. ALTER EGO

Plaintiffs' alter ego claims fair no better. Plaintiffs argue that Hopeman's "sister corporate and wholly owned subsidiary," Wayne Manufacturing Corporation ("Wayne"), was the alter ego of Hopeman. Plaintiffs assert that Wayne and Hopeman were effectively operating as a single business during the relevant period. Plaintiffs allege that Hopeman and Wayne were headed by an overlapping group of officers, shared a workspace, and had a nearly fully integrated business operation. Hopeman would supply Westinghouse Micarta and Johns-Manville Marinite to Wayne who would then glue the boards together for Hopeman to install at Avondale. These wallboards were only sold to entities outside of Hopeman when Hopeman was performing joiner work or providing the materials for joiner work to that outside entity. (Rec. Doc. 267-18, at 150-51). Notably, Plaintiffs even present evidence that all of Wayne's assets were transferred to another wholly owned subsidiary of Hopeman upon its liquidation in 1985. (Rec. Doc. 267-41, at 16-20). However, conversely, the parties also kept separate accounts, filed separate tax returns, and did not comingle funds. (Rec. Doc. 208, at 13-14).

4

Courts within the Eastern District have considered this exact issue to differing results. Judge Sarah Vance in *Cortez, et al., v. Lamorak Insurance Company, et al.*, No. 20-2389, Rec. Doc. 1142 (E.D. La. Aug. 10, 2022), evaluating the same arguments regarding Hopeman and Wayne, found that Plaintiffs failed to produce a single one of the factors necessary for alter ego liability under Louisiana law. *See Riggins v. Dixie Shoring Co.*, 590 So.2d 1164, 1168 (La. 1991). Judge Vance reasoned that because of "Louisiana's strong policy in favor of recognizing corporate separateness, and the Louisiana Supreme Court's statement that veil piercing is an extraordinary remedy," the close business relationship outlined by Plaintiffs is not enough to justify piercing the corporate veil. *Cortez*, No. 202389, Rec. Doc. 1142, at 25). Furthermore, Judge Vance reasoned that the majority of the business practices cited between Hopeman and Wayne are common to most parent-subsidiary relationships. *Id.* at 24 (citing *Administrators of Tulane Educ. Fund. V. Ipsen, S.A.*, 450 F. App'x 326, 330-32 (5th Cir. 2011)).

By contrast, Judge Ivan Lemelle denied a similar motion for summary judgment in *Becnel*, finding it persuasive that "Wayne was a wholly owned subsidiary of Hopeman during the relevant period, both corporations shared common officers, both companies shared the same address for a time, and Hopeman supplied Wayne's business." *Becnel,* No. 19-14546, Rec. Doc. 788, at *17. In reaching his conclusion, Judge Lemelle turned to the single business enterprise theory, finding it applicable to the Wayne/Hopeman relationship because Plaintiffs are seeking to "hold an affiliated corporation liable." *Id.* at *14. Judge Lemelle relied in part on

*Green v. Champion Insurance Co.*, 577 So.2d 249, 257-58 (La. App. 1st Cir. 1991), a Louisiana First Circuit case which set out eighteen factors to determine whether a single business entity exists and therefore by extension whether the corporate veil should be pierced:

1. corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control;
2. common directors or officers;
3. unified administrative control of corporations whose business functions are similar or supplementary;
4. directors and officers of one corporation act independently in the interest of that corporation;
5. corporation financing another corporation;
6. inadequate capitalization ("thin incorporation");
7. corporation causing the incorporation of another affiliated corporation;
8. corporation paying the salaries and other expenses or losses of another corporation;
9. receiving no business other than that given to it by its affiliated corporations;
10. corporation using the property of another corporation as its own;
11. noncompliance with corporate formalities;
12. common employees;
13. services rendered by the employees of one corporation on behalf of another corporation;
14. common offices;
15. centralized accounting;
16. undocumented transfers of funds between corporations;
17. unclear allocation of profits and losses between corporations; and
18. excessive fragmentation of a single enterprise into separate corporations.

*Id.* All factors need not be present in order to find that there is a single business enterprise, nor is this an exhaustive list of relevant considerations. Although the relationship between Hopeman and Wayne does not satisfy every single one of these factors, Judge Lemelle found that the businesses do meet several of these criteria, notably common directors, common offices, and Wayne receiving no business other

than that given it by Hopeman. Judge Vance, evaluating these same *Green* factors reached a different conclusion. She found that because veil piercing is an extraordinary remedy, businesses with such a typical parent-subsidiary structure should not be subject to such an exception. Such an extension, in Judge Vance's view, would mean that the exception would swallow the general rule of limited corporate liability.

This Court must agree with Judge Vance in finding that Wayne cannot be considered the alter ego of Hopeman. Although the two businesses shared close ties and overlapping governance, these factors alone are not enough to justify piercing the corporate veil. Furthermore, because Plaintiffs have not successfully pointed to any extraordinary circumstances such as fraud that might elevate these factors to the level of justifying the single business enterprise theory, the Court must grant Hopeman's motion on this issue.

## III. MANUFACTURER STRICT LIABILITY

The final issue in Hopeman's motion is whether Hopeman can be considered a manufacturer of asbestos-containing products and therefore be subject to strict liability. A plaintiff can recover against a manufacturer by "proving that his injury was caused by a condition of the product existing at the time it left the manufacturer's control that rendered the product unreasonably dangerous in normal use. *Becnel v. Lamorak Ins. Co.*, No. 19-14546, 2022 WL 3369163, at *2 (E.D. La. Aug. 16, 2022). Hopeman argues that it did not manufacture any asbestos-containing products and was merely a subcontractor that provided furnished wallboard to

Avondale. Plaintiffs, however, assert that Hopeman should be held liable as a manufacturer for its own modification and fabrication of wallboards for Avondale but also because Hopeman's role should be equated with Wayne for the same reasons that they argue Wayne is merely Hopeman's alter ego. Because this Court has already determined that Wayne is not Hopeman's alter ego and the two do not constitute a single business enterprise, this Court shall only address Plaintiffs' and Avondale's arguments that Hopeman can be considered a manufacturer for its own actions, not those of Wayne.

Outside of the alter ego theory, both Avondale and Plaintiffs argue that the Louisiana Products Liability Act ("LPLA") should be "illustrative" in this case because it codified pre-existing jurisprudence. (Rec. Doc. 251, at 5). *See also* (Rec. Doc. 267, at 22). However, the LPLA has been deemed by the Louisiana Supreme Court to have only prospective effect. *Gilboy v. Am. Tobacco Co.*, 582 So.2d 1263, 1264-65 (La. 1991). Avondale and Plaintiffs wish this Court to view the LPLA definition of a manufacturer as a mere extension of pre-existing law. However, the Court has no need to make this determination. Even under the LPLA definition of manufacturer, the claims against Hopeman fail.

Turning to the facts, Plaintiffs and Avondale allege that Hopeman was a joiner at Avondale from decades and worked to install asbestos panels as bulkhead panels and divisional panels throughout ships constructed there. (Rec. Doc. 251, at 3). Avondale alleges that Hopeman Wayne would manufacture panels for Hopeman's use which Hopeman would then cut down aboard ships to install, producing asbestos

dust in the process. *Id.* at 4. On these facts, multiple Courts within the Eastern District have found that Hopeman is not liable as a manufacturer, even under the LPLA definition. For example, Judge Susie Morgan in *Adams v. Eagle, Inc., et al.,* No. 21-694, Rec. Doc. 209, at *12 (E.D. La. Sept. 8, 2022) found that Hopeman "having a hand in manufacturing the vessels at Avondale by installing walls" was not enough to rise to the level of an LPLA manufacturer. Likewise in *Cortez*, Judge Vance reached the same conclusion, holding that "Hopeman was a subcontractor that merely furnished a component to Avondale, which was responsible for the final product" i.e. the ship itself. No. 20-2389, Rec. Doc. 1179, at *10. This Court must agree with the holdings in *Adams* and *Cortez*. To deem Hopeman a manufacturer would be to deem all joiners, carpenters, sheet rock installers, and other subcontractors as manufacturers of a finished product. Such an absurd result is certainly outside of the definition of a manufacturer, whether under the LPLA or not.

Avondale also responds to an argument that Hopeman does not seem to make in its motion by addressing professional vendor claims against Hopeman. (Rec. Doc. 251, at 7-9). Although Hopeman responds to this argument in its reply (Rec. Doc. 305, at 4-6) the Court finds no need to address an issue upon which Hopeman is not seeking summary judgment. To the extent that any professional vendor allegations remain against Hopeman, the Court makes no judgment on them in this Order.

New Orleans, Louisiana, this 24th day of January, 2024.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE